IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                              )
WAJDI TRAISH,                 )
                              )
        Plaintiff,            )
                              )
                              )
v.                            )  Civil Action No. 1:22-cv-00248
                              )
                              )
ZOLL MEDICAL CORPORATION,     )
                              )
        Defendant.            )
                              )
                              )
```

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment.

Plaintiff Wajdi Traish was employed as a Territory Manager for Defendant ZOLL Services, LLC ("ZOLL") from December 2018 to February 2020. Traish was responsible for generating sales of ZOLL's medical products in the Northern Virginia territory by visiting client facilities and marketing such products to physicians, patients, hospitals, and staff. While interviewing for the ZOLL position, Traish was told he would be expected to visit several Inova facilities as a part of his job duties. Four Inova facilities represent more than half of the ZOLL sales opportunities in the Northern Virginia territory.

1

Traish mentioned on his application that he was the Vice President for Inova Hospital from August 2012 through September 2014. He failed to disclose during the entire application process, however, that he had been permanently banned from all Inova facilities since his employment at Inova Hospital had ended. While signing his electronic application, he certified that any misrepresentation or omission of facts on his part during the hiring process might result in his dismissal at any time regardless of when it was discovered.

On December 5, 2018, Traish was offered the Territory Manager position ("Offer Letter"). After accepting the Offer Letter, on December 7, 2018, Traish signed an Agreement Concerning Inventions, Confidentiality, Nonsolicitation and Unfair Competition ("Confidentiality Agreement"), which stated that by executing the Confidentiality Agreement, Traish warranted that he was "not subject to any non-competition or other restrictions" that would be breached by virtue of his employment with ZOLL.

The Offer Letter provided for compensation in terms of a base salary and commissions determined by an annual compensation plan. Traish began working as a Territory Manager on December 17, 2018, and was first subject to the 2018 Sales Compensation Plan ("2018 Plan"), which ran from April 1, 2018, through March 30, 2019. The 2018 Plan awarded incentive pay based on the

2

fulfillment of pre-assigned quotas. A precondition for participating in the 2018 Plan was signing the Confidentiality Agreement and not breaching any obligations under that Agreement, otherwise, the participant would "not be entitled to receive incentive pay under th[e] Plan." The 2018 Plan provided that ZOLL "reserves the right to amend, revoke, or modify this Plan at any time." It also stated that assignments and quota expectations "may be changed at the discretion of the Company at any time." In the event of a payment dispute, the 2018 Plan required Traish to notify the Vice President of U.S. Sales, who had "the authority to make all determinations related to this Plan and to resolve all disputes related to the Plan in his or her sole discretion" with such decisions being "final and binding." The 2018 Plan further provides that there may be "processing or crediting errors, and other related causes" that result in initial overpayments, and that ZOLL "reserves the right to recoup any overpayment from future incentive payments until the overpayment has been repaid in full." It also states that it "shall not be construed in any way as constituting a contract of employment[]" and that, "[n]othing in this Plan shall in any way . . . obligate or imply future . . . compensation, or benefits."

During his first year of employment, Traish raised concerns with Regional Manager Alison Barlow and Area Director John

Brunetti that he was owed pay in terms of commissions under the 2018 Plan. They told him that his original quota goals were mistakenly set lower than they should have been. Accordingly, his commission payments were revised downwards.

Traish was then subject to the 2019 Sales Compensation Plan ("2019 Plan") from March 31, 2019, through the end of his employment on February 27, 2020. In his declaration, Traish admitted that he does not contest any of the payments he received under the 2019 Plan.

In mid-January of 2020, Barlow discovered that Traish was subject to a permanent ban from all Inova facilities. Barlow was also told by an Inova representative that Inova had reached out twice to Traish, once in 2014 and again in 2016, to notify him of his permanent ban. The Inova representative also asked that ZOLL ensure that Traish not enter Inova premises going forward. Barlow passed along this information to Director of Human Resources Leslie Cunningham, who then scheduled a call with Traish on January 16, 2020. Traish confirmed with Barlow and Cunningham that he had been banned from Inova facilities and had been notified of the ban in 2014 and 2016, but said he did not believe it was still in effect.

On February 5, 2020, Cunningham emailed Area Director Matthew Giese to argue that they should recommend Traish's termination if he could not regain access to Inova facilities.

4

On February 6, 2020, Cunningham decided to follow up with an Inova representative to determine whether the ban could be lifted, however, the representative reiterated that the ban was permanent and would remain in effect. That same day, Cunningham and Giese agreed to recommend the termination of Traish's employment to ZOLL Vice President of U.S. Sales Matt Theiler. Cunningham explained in an email to Giese that Traish's inability to access the facilities of an important client like Inova, as well as his failure to disclose the ban, were the reasons his employment should be terminated. Cunningham and Giese cited these same reasons when they formally recommended Traish's termination to Theiler on February 11, 2020. It was only afterwards, on February 13, 2020, that Traish emailed ZOLL's Human Resources department to request leave under the Family and Medical Leave Act ("FMLA"), and he was provided the necessary paperwork that same day. Traish's completed FMLA paperwork was sent to ZOLL on February 18, 2020, and ZOLL approved his request for FMLA leave to retroactively apply from February 5, 2020 through February 19, 2020. On February 27, 2020, ZOLL terminated Traish's employment.

On January 28, 2022, Traish filed an action in Virginia state court raising a breach of contract claim under Count I and a claim of unlawful retaliation in violation of the FMLA under Count II. He alleges ZOLL breached his compensation agreement

5

when it failed to pay him commissions earned under the 2018 Plan. He also alleges that ZOLL unlawfully terminated his employment in retaliation for taking leave under the FMLA. On March 4, 2022, ZOLL removed the lawsuit to federal court pursuant to federal question jurisdiction. On January 11, 2023, ZOLL filed the instant motion for summary judgment, which has been fully briefed and argued before this Court.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will be granted unless "a reasonable jury could return a verdict for the nonmoving party" on the evidence presented. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An otherwise properly supported summary judgment motion will not be defeated by the existence of a dispute as to immaterial facts; only disputes over facts that might affect the outcome of the trial will properly preclude the entry of summary judgment. Id. at 248. The claimant bears the initial burden of proof as to each and every element of his claims. See United States ex rel. Berge v. Bd. of Trustees of the Univ. of Alabama, 104 F.3d 1453, 1462 (4th Cir. 1997). "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal citation

omitted) (internal quotation marks omitted); Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014).

The Court finds there are no material facts in dispute and this case is ripe for summary judgment.

The Court first analyzes Plaintiff's claim that he is owed damages because of ZOLL's alleged breach of the 2018 Plan.

To prove a breach of contract claim under Virginia law, a plaintiff must demonstrate: "1) a legally enforceable obligation of a defendant to a plaintiff; 2) the defendant's violation or breach of that obligation; and 3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

In Jensen v. IBM, 454 F.3d 382, 384-88 (4th Cir. 2006), the Fourth Circuit held that a sales incentive plan imposed no legally enforceable obligation upon an employer when it contained express language that 1) the employee could not rely on the intended commissions described in the plan "until actual payment has been made"; 2) the employer could "modify or cancel the . . . plan at any time before commissions under it are paid"; and 3) the employee was "not entitled to any payment in advance of his receipt . . . of the payment." In its analysis, the Court also cited language from the plan that "this program does not constitute a promise by IBM to make any distributions under it." It reasoned that through such discretionary language,

7

the employer "manifested its clear intent to preclude the
formation of a contract." Id. at 388; see also Gill v. Genpact,
LLC, No. 1:17-cv-454 (LMB/JFA), 2017 WL 5319938, at *9 (E.D. Va.
Nov. 13, 2017) ("The Fourth Circuit has held that, under
Virginia law, a company does not make a contract offer when it
outlines the parameters of a discretionary compensation
system.") (citing Jensen, 454 F.3d at 388).

As in Jensen, the 2018 Plan's discretionary language
regarding the payment of commissions fails to create any legally
enforceable obligation that ZOLL owes Traish. The 2018 Plan
makes clear that nothing in it would "obligate or imply future .
. . compensation, or benefits," which means Traish could not
rely on it before he was actually paid for those sales. See
Jensen, 454 F.3d at 388. Traish received payment only after ZOLL
adjusted the quota requirement, which was perfectly consistent
with language in the 2018 Plan giving ZOLL "the right to amend,
revoke, or modify this Plan at any time[,]" such that
assignments and quota expectations "may be changed at the
discretion of the Company at any time." Such language clearly
expresses ZOLL's intent for scheduled commission payments under
the 2018 Plan to not form the basis of a contract.

Even assuming Traish could identify a contractual
obligation regarding his commission payments, the 2018 Plan gave
ZOLL "the sole discretion" to make "final and binding"

determinations regarding commission disputes. As such, ZOLL's determination that Traish's quota was erroneously set low and thus required a modification of payments owed to him, also means ZOLL could not have breached the 2018 Plan as a matter of law.

Finally, even if ZOLL did breach a contractual obligation under the 2018 Plan, Traish cannot establish damages for two reasons. If Traish had been owed commission payments based on the erroneously low quota information provided to him, ZOLL still had the right under the 2018 Plan to "recoup any overpayment from future incentive payments until the overpayment ha[d] been repaid in full." Therefore, ZOLL's decision to withhold such commission payments was merely an exercise of its right of recoupment under the 2018 Plan. ZOLL was not required to plead a counterclaim to recoup that money because its recoupment right was contractual rather than statutory in nature. Additionally, a precondition for receiving incentive pay under the 2018 Plan was complying with the obligations under the Confidentiality Agreement, which required Traish to certify he was "not subject to any . . . restrictions that You will breach by virtue of your employment with ZOLL." A regular part of Traish's job duties under ZOLL was visiting Inova facilities, even though Inova made clear he was permanently restricted from entering such facilities. Because Traish was "found to have breached his . . . obligations under the [Confidentiality

Agreement]" he was "not entitled to receive incentive pay" under the 2018 Plan, and thus cannot recover any damages.

On these undisputed material facts, Traish has failed to meet his burden of demonstrating any of the elements for a breach of contract claim, therefore, the Court finds that ZOLL should be awarded summary judgment on Count I.

The Court next addresses Traish's claim that ZOLL violated the FMLA when it allegedly fired him in retaliation for taking FMLA leave.

The FMLA protects eligible employees from being retaliated against by their employers for exercising their rights under the statute. 29 U.S.C. § 2615(a)(2). The Fourth Circuit applies the McDonnell-Douglas framework when evaluating FMLA retaliation claims. See Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 550-51 (4th Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973)). Under this framework, the plaintiff must first make a "prima facie showing that he 'engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity.'" Yashenko, 446 F.3d at 551 (quoting Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)). If the plaintiff establishes a prima facie case, it is then the defendant's burden to provide a "legitimate, nonretaliatory reason for taking the employment

10

action at issue." Hannah P. v. Coats, 916 F.3d 327, 347 (4th

Cir. 2019). If the defendant meets that burden, then the

plaintiff must demonstrate that the "employer's explanation was

false and a pretext for retaliation." Fry v. Rand Constr. Corp.,

964 F.3d 239, 245 (4th Cir. 2020). Establishing that the

employer's explanation is a pretext is "functionally equivalent"

to showing that retaliation was the but-for cause of plaintiff's

termination. Id. at 246. The mere fact that an employee is fired

after taking FMLA leave is not evidence of causality when an

employer was "proceeding along lines previously contemplated,

though not yet definitively determined[.]" Id. at 248 (quoting

Clark County School District v. Breeden, 532 U.S. 268, 272

(2001)).

Assuming Traish has made out a prima facie case for

retaliation, he still fails to establish that he would not have

been terminated but for taking FMLA leave. ZOLL has offered a

perfectly legitimate basis for firing Traish. Until he was

confronted about it by his supervisor, Traish failed to disclose

to ZOLL that he was permanently banned from entering Inova

facilities. He failed to do so despite the fact that while

interviewing for the ZOLL position, he was made aware that Inova

was the largest client in the region he would be servicing, and

he was told that he would be expected to visit client facilities

as a part of his job duties. He also failed to disclose this

11

information despite certifying that "any misrepresentation or
omission of facts called for" in his application "may result in
my dismissal at any time regardless of when the false answer or
omissions are discovered." ZOLL, therefore, possessed plainly
legitimate, non-retaliatory reasons for terminating Traish's
employment as it reasonably concluded that he could no longer
carry out his duties as a Territory Manager and he displayed a
lack of candor regarding the ban.

Traish cannot demonstrate ZOLL's offered explanation for
his firing is pretextual simply by pointing out he was fired
shortly after returning from FMLA leave. Like the employer in
Fry, ZOLL had been seriously contemplating Traish's termination
before he requested FMLA leave on February 13, 2020. See 964
F.3d at 248. ZOLL discovered the Inova ban in mid-January of
2020 and immediately raised the issue with Traish. On February
5, 2020, HR Director Leslie Cunningham told Area Director Matt
Giese that terminating Traish's employment would be "necessary
for the business" if he could not regain access to Inova
facilities. On February 6, 2020, Cunningham confirmed that Inova
was not open to lifting the ban. That same day, Cunningham
emailed Geise to reiterate how the Inova ban was the basis for
recommending Traish's termination. On February 11, Cunningham
and Giese sent out a formal recommendation to Vice President
Theiler that Traish's employment be terminated because of the

Inova ban. Because all these events occurred prior to Traish requesting FMLA leave, no reasonable jury could find Traish is entitled to an inference of retaliation simply because he was fired eight days after returning from his leave.

The Court finds that Traish has failed to meet his burden under the pretext inquiry of the McDonell-Douglas framework, and therefore, Count II fails as a matter of law.

For the aforementioned reasons, summary judgment should be granted to Defendant on both counts. An appropriate order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
March  9  , 2023

13